KNOLL, Judge.
Plaintiff, Phillip Esthay, filed a worker’s compensation claim against his employer, Manpower, Inc., and its insurer, Aetna Casualty & Surety Company, for injuries he sustained in a work related accident on December 7, 1988. Aetna paid worker’s compensation benefits and medical expenses from December 1988, until October 30,1990. Esthay then filed this compensation claim, seeking worker’s compensation benefits, penalties, and attorney’s fees. On March 10, 1992, the hearing officer awarded Esthay temporary total disability benefits in the amount of $120 per week from December 7, 1988, continuing for the duration of the disability, subject to a credit for all amounts previously paid. He also awarded Esthay all necessary medical, surgical, and hospital expenses, and denied Esthay’s claim for penalties and attorney’s fees.
On March 13, 1992, defendants filed a motion for a new trial on the basis of newly discovered evidence, a comparison of x-rays of plaintiffs rib fractures taken after an earlier accident with those taken in connection with this present accident. The hearing officer denied the motion. Thereafter, defendants suspensively appealed the judgment, asserting that the hearing officer erred in finding that Esthay met his burden of proving that he had suffered a compensable injury and the hearing officer abused his discretion in denying their motion for a new trial. Esthay answered the appeal and filed his own appeal, seeking penalties and attorney’s fees.
For reasons which follow, we affirm the judgment of the hearing officer, and amend the judgment to award penalties and attorney’s fees.
FACTS
In his worker’s compensation claim form, Esthay claims that he injured his legs, head, neck, and lumbar spine in a fall on December 7, 1988, while working for Manpower as a laborer at $4.50 per hour. At the hearing, he testified that as he was sweeping an aisle, he either tripped over a tumbuckle, a steel curb approximately 3^1 feet wide and 4 inches high, or slipped on something. He contends that an unknown oil-like substance caused or contributed to the accident and that a couple of days after the accident,, he found axle grease on his right shoe. He testified that he hit his middle torso on the steel curb, broke his ribs and hurt his back.
The record shows that prior to this injury, Esthay injured his back on August 18, 1986, in a fall while working for a company in Houston. Additionally, he had fractured his fifth, sixth, and seventh ribs on the left side in 1987, while working on a car at his home. Dr. Alexander Gol took x-rays on February 16, 1987, which showed a herniated disc at the L4-5 level and fractures of his ribs. On February 19, 1987, Dr. Clark A. Gunderson performed a lumbar laminectomy on Esthay.
After the 1988 fall, Esthay went to the emergency room at Lake Charles Memorial Hospital. Based on x-rays taken of Esthay at the emergency room of Memorial Hospital, Dr. Marcus Pittman, III, evaluated Es-thay’s condition as irritation of the cartilage where the rib cage meets the breast bone, and old left fifth and seventh rib fractures. Dr. Pittman recommended that his findings be correlated with the clinical findings.
Subsequently, Esthay saw Dr. Ford on December 12 and 19 of 1988. Dr. Ford took x-rays, which showed his rib fracture. Dr. Ford’s x-rays of Esthay showed what appeared to be a fracture of the seventh rib on the left side. His opinion that the fracture appeared to be recent differed from that of Dr. Pittman.
In addition to the rib fracture, Esthay claims that he suffered a lower back injury. Although the trial record does not contain much evidence concerning the back injury, documentary evidence from Dr. Gunderson indicates that on May 19,-1990, Esthay underwent a repeat lumbar laminectomy and *184 discectomy L4-5 with repair of pseudarthro-sis L4 to sacrum. Dr. Gunderson, in a memo dated November 14, 1990, indicated that Es-thay was currently disabled and would remain disabled for an undetermined length of time.
COMPENSATION BENEFITS
Defendants contend that the hearing officer was clearly erroneous in his conclusion that Esthay proved by a preponderance of the evidence that he suffered a compensa-ble work related accident. They argue that Esthay staged the accident and attempt to, attack his credibility.
The version of LSA-R.S. 23:1031 in effect at the time of Esthay’s injury provides:
“If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.”
The Louisiana Supreme Court, in Bruno v. Harbert Intern. Inc., 593 So.2d 357, 361 (La.1992), articulated the burden of proof and standard of review in worker’s compensation cases:
“Despite the liberal construction of the statute afforded the worker in a compensation action, the worker’s burden of proof is not relaxed. Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. A worker’s testimony may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence.
In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness’s uncontradicted testimony, although the witness is a party, absent ‘circumstances casting suspicion on the reliability of this testimony.’ The trial court’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error.” (Citations omitted.)
In Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989), the Louisiana Supreme Court stated:
“When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.” (Citations omitted).
The record bears out that the hearing officer was presented with Esthay’s consistent assertion that he was injured on the job, as well as evidence which questioned Es-thay’s character. In addition, the hearing officer was also presented with medical evidence which was corroborative of Esthay’s injury.
The record shows that on Manpower’s application form, which Esthay filled out on November 25,1988, prior to his employment, he falsified some information. He indicated that he had not received worker’s compensation benefits for injuries in the past 5 years. *185 In fact, he had suffered a previous back injury on August 18, 1986, while working for a company in Houston for which he received a $80,000 worker’s compensation settlement. He lived off of this settlement for 3 years, performing only odd jobs, such as auto repairs and caring for an elderly man.
He admitted that although he indicated on his employment application with Manpower that he had worked for P.P.G. as an electrical helper from June through August 1988, this was not true. Furthermore, Esthay did not work at Bechtel as he indicated on Manpower’s application. In fact, the job with Manpower was his first since his previous compensation claim, and he had only worked 5 or 6 days total before the present accident.
He also stated that he had been in five previous auto accidents, but denied ever injuring his back in any of them, despite documentary evidence which shows that he told Dr. Gol that he suffered a back injury in an auto accident which required hospitalization for 3 weeks and 3 months off work. In 1987, he had broken the fifth, sixth, and seventh ribs while working on a car at his home. He testified that he believed that his ribs on the right side had been broken, but medical records show that it was the left side. He misstated on his application that he had never been convicted of an offense other than a traffic violation, when he had a felony conviction for burglary at 16 years of age. He also stated that he had a ninth grade education, when, in fact, he had dropped out of school in the seventh grade.
The testimony of the other witnesses testified to the facts relating to this worker’s compensation claim. Michael Chatman, a handyman and part-time foreman, testified that he saw no grease in the area where Esthay fell. Ten to twenty minutes before the accident, Chatman had reprimanded Es-thay for taking too many water and cigarette breaks and had answered his questions about insurance.
David Trahan, a mechanic working on the barge in December of 1988, brought Esthay to the hospital. He saw no marks on Es-thay’s rib cage area. He testified that once Esthay favored his left arm in raising himself out of a chair, but did not favor his arm the second time.
David Chozen, the manager of Manpower, arrived at Memorial Hospital in time to see Esthay jump down from the cab of a pick-up truck, seemingly without difficulty. The cab appeared elevated on big tires. He testified that Esthay did not act injured until Chozen identified himself, at which time Esthay grabbed his ribs. Esthay had no signs of trauma such as redness, cuts, or scratches in the rib cage area. Esthay had a heavy coat on, which may explain the lack of marks on his body.
Larry Carter witnessed Esthay’s fall while sweeping approximately 15 steps away from Esthay. He saw no grease or anything else in the area on which Esthay could slip or trip. He saw no bruises or cuts on Carter. He testified that Esthay did not like his job, said he would not be there very long, was lazy, and faked the accident.
In a telephone deposition, Carter testified:
“Q. Do you have knowledge of Phillip Esthay having an accident while working on the job?
A. Well, it wasn’t an accident. He done it on purpose. Nothing was wrong with him.
Q. Tell me as best you can what happened and please speak a little bit louder. A. Okay. I was standing — I was working on the side of him and he been hollering he tired, he don’t feel like working and he’s cold and stuff like that. And I say, why you out here, man, you know, he didn’t feel like working. I said, why you out here? And then about — a little while after we was talking about that, he acted like he slip and fell like he, you know, on purpose. I saw him when he fell. And it wasn’t no fall. It was just a fake fall.
Q. About how far away from him were you?
A. About from — I’d say about — about ten steps away from him.
Q. Tell me again in as much detail as you can remember what Phillip Esthay said before he had this fall. I know you said he *186 said he was cold and he was tired. What else did you say?
A. He didn’t feel like working.
Q. And didn’t feel like working?
A. I said, why you out there. And then for a little while after that he just acted like he slip and fell. I saw when he fell, it was a fake fall.
Q. How could you tell it was a fake fall? A. Because I was right there. I saw. He just, you know, it wasn’t slippery over there at that area.
Q. That was going to be my next question. Did you see any foreign objects or any foreign substances on the area of that barge where he was working that may have caused or contributed to a fall.
A. No, that I know of.”
In a later deposition, Carter further testified as follows:
“Q. Did you observe him from the time Phillip was standing to the time he took the fall?
A. Yeah. Yeah. I was facing — he was going this way and I was going this way. I was pushing the broom that way and he was pushing it this way. So I could see him right when he just fell down. And he didn’t slip or nothing. You know the difference if you trip and fall, and nothing was there to hurt him, you know.
So that’s when I told him, I said, ‘He’s not hurt, he’s faking.’
Q. What part of his body did he fall on?
A. On his side like over the rail like that (indicating).
Q. What side?
A. Left side.
Q. The left side?
A. Yeah, the left side.
Q. Did he at any time brace himself with his hands?
A. Yeah, he braced hisself. I saw it. He — his hands was out first (indicating) when he fell.
Q. Okay. How much time — and you can just give me your best estimate — how much time elapsed from the time Phillip Esthay complained to you about not wanting to work to the time he took the fall?
A. How much time?
Huh.
I would say about an hour, something like that. I would say an hour.
Q. Okay. Were Phillip Esthay’s complaints constant and ongoing or were—
A. Uh-huh. Constant.”
In contrast to these witnesses, Dr. Ford’s x-rays of Esthay taken in December of 1988 showed what appeared to be a fracture of the seventh rib on the left side.[1] His opinion that the fracture appeared to be recent differed from that of Dr. Pittman. Dr. Ford, however, was unaware that Esthay had previously fractured his left ribs. Dr. Ford admitted that if Esthay’s x-rays from 1987 were compared to those taken of Esthay’s ribs after the 1988 accident, and the comparison showed that the fractures were in the same location, he would have to say that he was mistaken in his opinion that Esthay suffered a recent rib fracture. The record contains the following colloquy:
“Q. If x-rays were available from 1987 and they were compared to this x-ray and the rib fracture was in exactly the same position—
A. Well, then I would have to say, Well, I am mistaken. This is an old fracture. This simply has an appearance of being new,’ if it was in exactly the same place.
Q. So you’d need those old x-rays to make that comparison?
A. Yes.”
Dr. Ford was never given the x-rays of 1987 in order to make a comparison. On the other hand, Dr. Ford further testified that x-rays taken on March 20, 1990, showed that the fracture was becoming smooth, which is consistent with the normal course and time lapse of healing of a rib fracture from December 7, 1988.
*187 Viewing the record before us, it is clear that the hearing officer was presented with diverging views on the threshold question of whether Esthay suffered an on the job accident which injured him. Ultimately, the hearing officer’s written reasons show that he chose to assign more weight to Dr. Ford’s and Esthay’s testimony and found that Es-thay injured his ribs and/or his back in a work related accident on December 7, 1988. After carefully reviewing the evidence in light of the varying functions of the trial (hearing) level and that of appellate review, we can not say that the hearing officer’s credibility determinations regarding Esthay’s assertions are clearly wrong. Thus, in light of the established jurisprudence as cited above, we do not find the hearing officer’s factual findings are manifestly erroneous.
MOTION FOR NEW TRIAL
Defendants maintain that because Dr. Ford’s deposition testimony, which the hearing officer stated in his ruling dated February 12, 1992, “makes credible claimant’s allegations that he suffered an injury while in the scope of employment ..was taken at the insistence of the hearing officer at the close of trial, defendants did not have the opportunity to counter his opinion. Defendants maintain that they should be entitled to submit, in a new trial, a report of a radiologist, Dr. William Kimball, comparing Esthay’s 1987 rib x-rays with the December 7, 1988 x-rays.
Defendants filed a motion for new trial in accordance with LSA-C.C.P. Art. 1972. The article provides in pertinent part:
“A new trial shall be granted, upon the contradictory motion of any party, in the following cases:
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.”
To obtain a new trial, the moving party must show that the new evidence was not cumulative, would tend to change the result of the case, and could not have been discovered before or during trial with due diligence. Wright v. Hirsch, 572 So.2d 783 (La.App. 4th Cir.1990), writ denied, 576 So.2d 31 (La.1991). “Due diligence” does not require that a party do all that is possible to-discover the evidence; it is sufficient that a party do all that is reasonable to lead to the discovery of evidence. Ford v. Hartford Ins. Co., 528 So.2d 770 (La.App. 3rd Cir.1988).
We find that defendants had ample time since the date of the alleged accident on December 7,1988, to investigate and procure evidence concerning Esthay’s rib fracture. As the hearing officer noted, the evidence was certainly discoverable and known to be pertinent by both parties before the hearing. Thus, we agree with the denial of defendant’s motion for a new trial.
PENALTIES AND ATTORNEY’S FEES
Esthay separately appealed the judgment of the hearing officer which denied his claim for penalties and attorney’s fees.
The record shows that Esthay promptly reported his accident and submitted to medical treatment. Likewise shown in the record is the fact that the defendants paid worker’s compensation benefits from December 7, 1988, the date of the accident, until October 30, 1990.
An employer who fails to investigate an employee’s compensation claim subjects itself to statutory penalties and attorney’s fees. Nelson v. Roadway Exp., Inc., 588 So.2d 350 (La.1991).
For the reasons elaborated upon herein-above, it is clear that the defendants waited an inordinate amount of time to unilaterally discontinue worker’s compensation benefits, choosing almost two years post-accident to contest that any accident ever occurred. Moreover, the record shows that the defendants knew of Esthay’s prior rib fractures, but did not commence a medical investigation on Esthay’s prior medical condition in order to resolve the dispute until after Dr. Ford’s deposition which was taken after the hearing.
Under these circumstances, we find that Aetna was arbitrary and capricious in refusing to pay worker’s compensation benefits after October 30, 1990. Accordingly, Esthay *188 is entitled to receive statutory penalties on the total payments due, as well as reasonable attorney’s fees for representation at the hearing level and for successfully defending this appeal in the amount of $8,500.
For the foregoing reasons, the judgment of the hearing officer finding Phillip Esthay temporarily totally disabled is affirmed. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Phillip Esthay and against Manpower and Aetna Casualty & Surety Company for 12% penalties on the total now due, and for reasonable attorney’s fees of $8,500, together with legal interest until paid. All costs of trial and this appeal are assessed to Manpower and Aetna Casualty.
AMENDED AND AFFIRMED AS AMENDED AND RENDERED.
DOUCET, J., concurs.

. Dr. Ford did not testify at the hearing. However, the hearing officer rendered a post-trial order holding the record open for the submission of Dr. Ford's deposition as to whether Esthay had suffered a fractured rib during the 1988 accident while working for Manpower. Accordingly, the parties took Dr. Ford’s deposition, which is in the record before us.