NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 17-377

SUCCESSION OF MARY LOU THRASHER

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 41,488
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Van H. Kyzar, Judges.

**AFFIRMED.**

Elizabeth J. Wilson
Attorney at Law
909 Poydras St., Suite 1400
New Orleans, LA 70112
(985) 687-6770
COUNSEL FOR APPELLANT:
    Jeffrey Thrasher

E. Grey Burnes Talley
Burnes, Burnes & Talley
P. O. Box 650
Alexandria, La 71309-0650
(318) 442-5231
COUNSEL FOR APPELLEE:
    Julie Thrasher

**KYZAR, Judge.**

This matter involves the validity of an Act of Cash Sale and an Act of Donation, purportedly signed by the decedent, Mary Lou Thrasher, transferring sole ownership of her home in Alexandria, Louisiana to her son, Jeffrey Thrasher. The trial court found that Ms. Thrasher had not sold or donated her home prior to her death. Accordingly, the trial court signed a judgment invalidating both documents, and Jeffrey Thrasher appealed. For the reasons set forth herein, we affirm the ruling of the trial court.

### Facts and Procedural History

The parties to the current suit are the two adult children of Mary Lou Thrasher: Jeffrey Thrasher and Julie Thrasher. Mary Lou Thrasher resided in her home at 5229 Argonne Boulevard, Alexandria, Louisiana, beginning just after her divorce until she fell ill some time in 2009, after which she split her time between her residence in Alexandria and her daughter Julie's residence in New Orleans, to allow for Julie to assist her. On December 25, 2010, Mary Lou Thrasher suffered a stroke which limited her mobility and coordination and caused Julie to quit her job in order to move in with and take care of her mother in Alexandria. In the fall of 2011, Mary Lou fell and suffered a broken vertebra in her back due to disorientation caused by a kidney infection. Because of this, she was hospitalized in the East Jefferson General Hospital in Metairie in October of 2011, waiting for an infection to clear up before she could have surgery to address her back issues.

Appellant, Jeffrey Thrasher, alleges that on October 15, 2011, while Mary Lou was hospitalized, he traveled from Baton Rouge to East Jefferson General Hospital in Metairie, Louisiana, to visit his mother. Jeffrey did not contact or inform Julie before setting out, though Julie was known to be attending to Mary Lou during her hospital stay. The purpose of Jeffrey's supposed visit was to execute an Act of Cash Sale and a simultaneous Act of Donation, transferring the ownership of Mary Lou's immovable property at 5229 Argonne Boulevard solely to Jeffrey. To achieve this, Jeffrey brought

with him his attorney to act as a notary, two witnesses, and the pre-prepared Acts to be signed. The Act of Cash Sale stated a price of $130,000.00 for the home, though no money exchanged hands. A simultaneous Act of Donation was also included. Jeffrey asserts that Mary Lou signed both documents transferring sole ownership of the property to him, an act recognized by the signatures of the notary and two witnesses.

Respondent, Julie Thrasher, asserts this visit could not have occurred as claimed, as she remained with Mary Lou in her hospital room for the entirety of October 15, 2011, leaving only briefly to get food in the cafeteria. Jeffrey stated that his attorney, Jeffry Sanford, filmed the transaction on his phone to document Mary Lou's intent concerning the transfer of ownership, but that the video was not saved and the phone was then lost. On October 21, 2011, six days after the alleged visit from Jeffrey, Mary Lou executed a Power of Attorney in Julie's favor.

On November 16, 2012, Mary Lou executed her notarial Last Will and Testament before her long-time attorney and friend, B. Gerald Weeks. Included in this testament is Mary Lou's immovable property at 5229 Argonne Boulevard, which was given to "[Mary Lou's] children with 60% to Julie Anne Thrasher and 40% to Jeffrey Paul Thrasher, since Julie Anne Thrasher has been caring for me after my stroke 12/25/2010, and she shall control house." No mention is made of the Act of Cash Sale or Act of Donation in favor of Jeffrey.

No communication occurred between the two siblings or between Julie and Mary Lou regarding this purported sale of Mary Lou's immovable property. The Act of Cash Sale was recorded in the conveyance records of Rapides Parish. In December of 2012, Julie and Mary Lou discovered that Jeffrey had paid the property taxes on Mary Lou's home. Thereafter, they located the recorded Act of Cash Sale which had been filed in the conveyance records of Rapides Parish under Mary Lou's maiden name. When questioned about the document by Julie, Mary Lou responded, "I don't know what that is."

2

Mary Lou Thrasher died in her home in Alexandria on November 17, 2013. At the time of her death, she resided there with her daughter Julie. Less than a month later, on December 15, 2013, Jeffrey posted an eviction notice on the door to the Alexandria home, notifying Julie to vacate the premises. Pursuant to this, Jeffrey filed a Rule to Evict Tenant on January 23, 2014 in Alexandria City Court. As Julie had filed a Petition for Filing, Execution of Will, and for Possession in response to Jeffrey's eviction notice on December 30, 2013 in district court, she filed an Exception of *Lis Pendens* in the city court eviction matter. Julie's exception was once continued and finally granted by the city court on April 14, 2014.

In response to Julie's petition and motion to set hearing, Jeffrey filed Declinatory Exceptions of Insufficiency of Process and Insufficiency of Service of Process, Dilatory Exception of Improper Cumulation of Actions, Peremptory Exceptions of No Cause and No Right of Action, Motion to Continue and for Sanctions. The matter was heard on April 14, 2014, with the district court denying all exceptions other than the exception of no cause of action. In granting that exception, the trial court further ruled to permit Julie to file a petition to nullify the Act of Cash Sale, and the parties stipulated that a hearing would be held to determine the validity of that act. At no time up to this point did Jeffrey assert or plead the existence of the corresponding Act of Donation, which was never filed in the conveyance records for Rapides Parish and of which Julie was unaware.

Julie filed her "Petition re: Act of Cash Sale" in district court on April 22, 2014. Said petition requests to have the court "declare the Act of Cash Sale a nullity as a simulation; as invalid due to non-payment of the recited sales price; as subject to error, fraud, duress, or lesion; or for any other lawful reason." In response, Jeffrey again filed Peremptory Exceptions of No Cause and No Right of Action. During discovery depositions in July of 2015, Jeffrey revealed, for the first time, the existence of an Act of Donation purportedly signed by his mother simultaneously with the Act of Cash Sale.

3

After a multitude of motions by both parties, a trial on the merits was held on December 1, 2015. At the trial, witnesses for both sides testified regarding the validity of the Act of Cash Sale and the Act of Donation. In its reasons for ruling, the trial court notes the conflicting testimony of both sides, and ultimately finds the testimony of the plaintiff's witnesses, including testimony from an expert in handwriting analysis, to be credible. Therefore, the trial court found that the signatures on the acts could not be relied upon and accordingly invalidated both acts.

On September 9, 2016, Jeffrey filed a timely Motion for New Trial asserting that the ruling was clearly contrary to the law and evidence, and claiming newly discovered evidence in that his attorney, Mr. Sanford, was able to recover the previously lost video evidence of the execution of the acts of cash sale and donation by hiring a forensic computer examiner. The motion was heard on November 16, 2016, by a different judge for the district than the trial judge, necessitated by normal rotation procedures of the district court. At the hearing, Mr. Sanford testified that he had not asked any computer or phone specialist if it was possible to recover the video recording until after the December 1, 2015 judgment. In denying the Motion for New Trial, the trial court ruled that the evidence had already been weighed by the court and that the record was clear that discussions regarding the video recording and what it purportedly captured had occurred many times and could have been thoroughly investigated and produced prior to the December 1, 2015 judgment.

Jeffrey appeals both the December 1, 2015 judgment invalidating the Act of Cash Sale and Act of Donation and the September 9, 2016 judgment denying his Motion for New Trial. On appeal, Jeffrey urges six assignments of error:

1. The District Court committed legal error in weighing the testimony of the handwriting expert over that of the attorney who served as the notary and the two witnesses to the authentic acts.

2. The District Court committed legal error in "invalidating" an Act of Cash Sale and Act of Donation on the basis of a handwriting expert's

4

opinion which contradicted the sworn testimony of the Attorney / Notary Public and two witnesses before whom the acts were passed.

3. The District Court committed legal error in shifting the burden of proof to Defendant to provide additional evidence to prove the self-authenticating Act of Sale and Act of Donation where the Estate failed to meet its initial burden of proving by strong and convincing evidence that the authentic instruments at issue had been forged or created fraudulently.

4. The District Court committed legal error in invalidating the authentic Act of Sale and Act of Donation without making a finding of forgery or fraud.

5. The District Court committed legal error in invalidating the Act of Donation when the[sic] such a motion was not properly before the court.

6. The District Court erred in denying a Motion for New Trial without considering newly discovered dispositive video evidence of the donor's intent.

**Opinion**

*Invalidation of Act of Cash Sale and Act of Donation*

 *i.* *Authentic Act*

Although not explicitly stated in his assignments of error, Jeffrey argues on appeal that it was legal error for the trial court to invalidate the Act of Cash Sale and Act of Donation based upon testimonial evidence as he contends both documents are valid authentic acts. As Jeffrey notes, the law accords a high degree of sanctity to authentic acts. *DiVincenti v. McIntyre*, 611 So.2d 140 (La.App. 1 Cir.1992), *writ denied*, 614 So.2d 1264 (La.1993). Generally, an authentic act constitutes full proof of the agreement it contains. La.Civ. Code art. 1835. Because of this, no parol evidence may be introduced to alter its contents. *Namas Noor Sdn Bhd v. Williams*, 112 F.Supp.2d 580, 583 (M.D. La.2000). Jeffrey argues that because he has documents purportedly bearing signatures of Mary Lou, a notary, and two witnesses, no trial should ever have occurred. This argument, however, fails to take into account the allegations made in Julie's Petition re. Act of Cash Sale; Julie specifically pleads for the declaration of "the Act of Cash Sale [as] a nullity as a simulation; as invalid due to non-payment of

5

the recited sales price; as subject to error, fraud, duress, or lesion; or for any other lawful reason."

Former art. 2236 of the 1870 Civil Code (the predecessor to art. 1835) stated that "[t]he authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared a forgery." The current version, now art. 1835, omitted the reference to forgery, but did not change the law. La.Civ.Code art. 1835 cmt. (a). The comments to art. 1835 further explain that the reference was no longer necessary because "[a] forged act is of course not authentic and can have no evidentiary effect." La.Civ.Code art. 1835 cmt. (b); *Namas Noor*, 112 F.Supp.2d 580.

The original document, titled Act of Cash Sale, listed a sale price, though Jeffrey admits that no money was intended to exchange hands and instead, the true consideration for the transfer was the "lifetime of diligent and honorable service to his mother." The document titled Act of Donation purports to have the same legal effect as the Act of Cash Sale, merely without listing a price for the property. When questioned by the trial court as to why two separate documents purportedly having the same legal effect were executed, Attorney Sanford testified that it was merely his habit to do two documents so as to show the "donative intent" in the event of a challenge to the cash sale.

It is well settled that a person denying the validity of the signature bears the burden of proving the forgery. *Coleman v. Egle*, 376 So.2d 983 (La.App. 1 Cir. 1979), *writ denied*, 379 So.2d 15 (La.1980); *Thompson v. Woods*, 525 So.2d 174 (La.App. 3 Cir. 1988). "[A]uthentic acts are presumed to be valid and a party asserting otherwise must present strong and convincing proof of such magnitude as to overcome this presumption." *Wiedemann v. Weidemann*, 09–41, p. 4 (La.App. 5 Cir. 12/29/09), 30 So.3d 972, 974, (citing *Meltzer v. Meltzer*, 95–551, 95–552 (La.App. 4 Cir. 9/28/95), 662 So.2d 58, *writ denied*, 95–2616 (La.1/5/96), 666 So.2d 293, *writ denied*, 10–242

6

(La.4/9/10), 31 So.3d 390). Parol evidence may be admitted to prove allegations of forgery of a signature on an authentic act. *Succession of Robinson*, 654 So.2d 682 (La. 1995); *Bass v. Coupel*, 671 So.2d 344 (La.App. 1 Cir. 1995), *writ denied*, 669 So.2d 426 (La. 1996). Further, "fraud or error in contracts may always be shown by parol evidence. It makes no difference that the contract in the particular case is a sale of real estate by notarial act." *Le Bleu v. Savoie*, 109 La. 680, 33 So. 729 (1903).

The Act of Cash Sale and Act of Donation both purport to be in authentic form, i.e. executed before a notary public, in the presence of two witnesses, and signed by all. See La.Civ.Code art. 1833. Both concern the same immovable property located at 5229 Argonne Boulevard, Alexandria, Louisiana, and purport to transfer sole ownership of said property from Mary Lou Thrasher to Jeffrey Thrasher. According to Jeffrey, the documents were signed and notarized at the same time. Though the Act of Cash Sale lists a sale price of $130,000.00 for the property, no money was ever exchanged or intended to be exchanged, as stated by Jeffrey himself. The same witnesses testified regarding both acts. It is clear that the Act of Donation was not intended to have any separate effect from the Act of Cash Sale, and cannot be said to serve any individual purpose other than to allow Jeffrey Thrasher a second attempt at litigating this issue. In fact, a question must be asked as to why the transfer was done as a "cash sale," even though it was admittedly a simulation. Thus, the parol evidence concerning the events surrounding the alleged transactions was properly considered by the trial court as it may be considered at least as an inference of fraud.

The Act of Donation was held in a private file in the office of Jeffrey's attorney, Mr. Sanford. The Act of Cash Sale was filed in the public records by Jeffrey and his attorney, though it was inexplicably set up to be executed and recorded under the name Mary Lou Thrasher Motter. However, there is no indication that Mary Lou Thrasher otherwise used her maiden name Motter at any point, and certainly not in addition to her married name. In fact, it was specifically testified that Mary Lou was known to her

7

friends as Thrasher, not Motter. The execution and then the filing of the act under the name "Motter," as opposed to Thrasher, allowed the document to be recorded in the conveyance records in such a way as to ensure that it could not be easily detected. This evidence could also be construed at least as an inference of fraud. This is further bolstered by Julie's testimony that when questioned about the document in December of 2012, Mary Lou responded, "I don't know what that is."

Jeffrey is correct that Julie bears the burden of proving any fraud or forgery. As such, the trial court was proper in allowing the introduction of parol evidence by Julie in order to show that the documents are not authentic as being the result of forgery or fraud as alleged in her pleadings. Julie did so by offering a variety of evidence, including testimony of witnesses, documents, and an expert witness. On appeal, Jeffrey argues that only the witnesses offered by him are relevant and capable of testifying in the matter, as none of Julie's witnesses claimed to be present in the hospital on the day in question. As previously noted, this argument ignores the fact that the validity the documents are properly before the court by virtue of the issues raised by Julie's petition.

As restricted to the proof of the error or fraud, parol evidence is admissible. *Le Bleu*, 109 La. 680. As such, the testimony of the witnesses was relevant to the questions before the court, insofar as it related to Mary Lou's actual knowledge of the Act of Cash Sale and Act of Donation, her intent regarding her immovable property, and whether the acts were her own. Louisiana jurisprudence is clear that the introduction of such parol evidence is always admissible to show such fraud as is alleged here. Therefore, we find this portion of Jeffrey's argument without merit.

### ii.    Weighing of the Evidence

The first three errors assigned by appellant revolve around the district court's weighing of the evidence and whether Julie met her burden of proof to invalidate authentic acts. As such, they will be addressed together. Jeffrey argues that the district court committed legal error by giving greater weight to the testimony of the plaintiff's

expert and witnesses over that of the defense witnesses and by ruling in Julie's favor based upon that determination.

The appellate court must determine whether the trial court committed an error of law or made a factual finding that was manifestly erroneous or clearly wrong. *Gibson v. State*, 99–1730 (La. 4/11/00), 758 So.2d 782, *cert. denied*, 531 U.S. 1052, 121 S.Ct. 656 (2000). The reviewing court must review the record in its entirety to make this determination. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Stobart v. State*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

Credibility determinations are subject to the strictest deference and the manifest error-clearly wrong standard demands great deference for the trier of fact's findings. *Rosell*, 549 So.2d 840. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong but whether the factfinder's conclusion was a reasonable one." *Stobart*, 617 So.2d at 882. The reviewing court may not disturb reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety, even though it feels its evaluations are more reasonable. *Id.* In this case, the trial court was presented with a variety of evidence, mostly in the form of documents and witness testimony, including an expert witness. The trial court also considered the Act of Donation and Act of Cash Sale, which were both introduced without objection.

The first witness to be called was B. Gerald Weeks, the personal attorney of Mary Lou, who had handled numerous legal issues for her since the late 1970s. Mr. Weeks testified to two specific instances in 2012 in which he required Mary Lou's signature; paperwork from an unrelated lawsuit and the November 15 last will and testament. Mr. Weeks specifically states that Mary Lou did not require assistance in either instance, even though the latter instance occurred in a vehicle. This calls in to question the

9

defense testimony regarding the apparent aid given to Mary Lou during the purported signing of the Act of Donation. Both Alan Greco and Jerri Rhodes testified for Jeffery that Mr. Greco assisted Mary Lou with her signature on October 15, 2011.

Jeffrey Thrasher testified at trial, stating that his mother contacted him in 2011 and pressured him about transferring her home to him. Jeffrey asserted that she asked him to have the papers drawn up "about a month before" the date in question and that was the reason he contacted Jeffry Sanford, who was not his attorney before that time. Julie Thrasher also testified, specifically noting a conversation between Jeffery and her that occurred on or about October 9, 2011. She stated the substance of the conversation was that Jeffrey attempted to persuade her to assist him in removing property from Mary Lou's name or ownership, putting the assets in the names of her children. He told Julie doing so was a way to get the state to pay if Mary Lou was forced to go to a nursing home. Julie, who is a certified nursing home administrator, testified that she adamantly refused and informed Jeffrey that such actions were not proper or legal, and constituted fraud. She then informed Jeffrey of the impending Power of Attorney to be executed in her favor as Julie was the predominant caretaker of Mary Lou while hospitalized and was required to sign medical documents on Mary Lou's behalf.

Jeffrey denies the conversation ever occurred and that the transfer of ownership not only occurred, but occurred at the behest of Mary Lou. This assertion is undermined by Jeffrey's own testimony, wherein he stated in regards to property taxes that he had "been paying since I had [the property] put in my name", indicating that it was not Mary Lou's intent but was his own. Further, there is no explanation for why Jeffry Sanford, who was not Jeffrey Thrasher's attorney before this transaction according to their testimony, would have been contacted to handle such a matter when Mary Lou clearly had an attorney and longtime friend she employed to handle her legal affairs. It remains unanswered why Mary Lou would not have contacted B. Gerald Weeks, her own

10

personal attorney, to have the acts created. This again raises at the least an inference of fraud or forgery.

Julie Thrasher also offered the testimony of Robert G. Foley, who has been a forensic document examiner, more commonly known as a handwriting expert, since he began practicing in 1972. Mr. Foley gives frequent lectures, mainly to law enforcement personnel or agencies, and has several publications in forensic science journals concerning his specialty. He has also testified as an expert witness hundreds of times previously. The trial court accepted Mr. Foley as an expert and allowed him to testify as such. Jeffrey argues on appeal that it was error for the trial court to give more weight to Mr. Foley's testimony than to the contradictory testimony offered by his witnesses. The standard for evaluating expert witness testimony has been previously stated by this court:

> The weight to which it is entitled depends on the witnesses' training, experience, possible bias and opportunity for observation. Also important are his logic, reasoning and the basis for his opinion, such as the tests involved here. *Town of Slidell v. Temple*, 155 So.2d 681 (La.App.1st Cir. 1963); *Austin v. Industrial Lumber Company*, La.App., 8 So.2d 727; *Nixon v. Pittsburg Plate Glass Company*, La.App ., 161 So.2d 361.

*Matthews v. All Am. Assur. Co.*, 226 So.2d 181, 184 (La.App. 3 Cir.), *writ refused*, 254 La. 923, 228 So.2d 483 (1969).

As previously noted, Robert Foley has extensive experience and training in his work as a forensic document examiner. During trial, Mr. Foley used exhibits to show the signatures he compared. In fact, the trial judge viewed the signatures in question on the two acts while Mr. Foley was testifying as to his methods and conclusions. He points out the major inconsistencies that he found between the Act of Cash Sale and the Act of Donation, which were purportedly done at the same time. He notes that the signature on the Act of Donation is "totally illegible." Mr. Foley specifically testified that it is "probable that the signer of the comparative documents [Mary Lou], did not sign the Cash Sale Deed or the Donation."

11

In turn, Jeffrey offered the testimony of himself and three others: the notary and the two witnesses who signed the Act of Donation and Act of Cash Sale. At trial, Jeffrey references the video-recording of the supposed signing stating it was created for "insurance," much like the Act of Donation was for insurance in the case of a challenge to the cash sale. Jeffrey further testified that his wife was not a witness to the acts because she "didn't want anything to do with this." This evidence, when considered with other facts presented, could further have been accepted as an inference of fraud or forgery.

Alan Greco, who signed the acts as a witness, also testified for the defense. Greco stated that the group was at the hospital with Mary Lou between 12 P.M. and 1 P.M. on the day in question. Though he said that Mary Lou signed both the Act of Cash Sale and Act of Donation, Greco also testified that Mary Lou dropped the pen at some point before or during the signing of the Act of Donation. Both Greco and Jerri Rhodes, the other witness to sign the acts, testified that Mary Lou required assistance from Greco to sign the document after dropping the pen, though the two were inconsistent as to what form such assistance took, i.e. whether Greco grasped the pen with Mary Lou or merely steadied the paper. Further testimony established that a nurse came into the room while Jeffrey and his assorted companions were there. The nurse was asked to leave by the group. If indeed the interaction occurred, it is possible to infer the group did not wish to have any unbiased witnesses present, thus raising yet another potential inference of fraud or forgery. Julie Thrasher testified that she was not told by the nursing staff about Jeffrey's visit at any point.

In its reasons for ruling, the trial court notes that the witnesses called by each side offer contradictory testimony. The court clearly states that it based its opinion upon the testimony of all witnesses, listening and relying on them and relying on the expert witness' testimony. It notes the testimony of the witnesses for the defense, which stated that they were witnesses to the actual Act of Cash Sale and Act of Donation and that

12

Mary Lou wanted to give her son the home. It also points out the testimony of the plaintiff's witnesses, which stated they were clearly told by Mary Lou that she had not sold her home subsequent to the date of the Act of Cash Sale and Act of Donation. The trial court further noted that the plaintiff witnesses were "very credible witnesses." The trial court finally considered the expert witness' testimony, which stated the signatures on the Act of Cash Sale and the Act of Donation were inconsistent and that it is probable Mary Lou did not sign either of these documents. Although Attorney Sanford testified that Mary Lou signed the documents and had the capacity to do so, the trial court was free to disregard that testimony in favor of that of Julie, her witnesses, and Robert Foley, the expert.

We also note that there are additional inconsistencies within the purported authentic acts.

> Louisiana Civil Code article 1541 requires that donations *inter vivos* be accomplished by authentic act under the penalty of absolute nullity. An "authentic act" is defined as a "writing executed before a notary public ..., in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed." La. Civ. Code art. 1833(A). **Any material deviation from the requirements governing authentic acts is fatal.** *Hardin v. Williams*, 468 So.2d 1302, 1304 (La. App. 1st Cir.), *aff'd*, 478 So.2d 1214 (La. 1985). To invalidate an act that purports to be authentic on its face, the proof must be strong and convincing in order to overcome the presumption of validity. See *Eschete v. Eschete*, 2012-2059 (La. App. 1st Cir. 2/27/14), 142 So.3d 985, 987.

*Villenuve v. Cash*, 16-1530 (La.App. 1 Cir. 9/21/17, 4) (emphasis added).

Both the Act of Cash Sale and the Act of Donation have small but obvious errors. First, both instruments state that they were executed in Baton Rouge, Louisiana, on October 15, 2011. It is undisputed, however, that Mary Lou was in a hospital in Metairie, Louisiana on the date in question. Next, Mary Lou's name was printed on the documents and filed as Mary Lou Thrasher Motter, though it is clear from the record that Mary Lou had not used the name Motter for a number of years. Thirdly, the street address of the immovable property to be transferred was misspelled in the documents

13

as "Argon Blvd" rather than the correct "Argonne Boulevard." There was even some initial discussion as to whether the date of October 15, 2011 was correct depending on whether the events occurred on a Saturday or Sunday. Further, the Act of Cash Sale was an admitted simulation at best. While the trial court was not required to invalidate the acts based upon these discrepancies, it is within its rights to consider them. Coupled with this is the defense testimony that Mary Lou could not sign without assistance, though she did not require any to sign the power of attorney less than a week later, and expert witness testimony that it is probable Mary Lou did not sign both documents. Based upon the presented evidence, the trial court decided it could not rely on the signatures of Mary Lou on the acts and invalidated both the Act of Cash Sale and Act of Donation.

The trial court in this case was presented with conflicting testimony. In its rightful role as factfinder, the trial court, particularly noting the expert witness testimony, found the witnesses for the plaintiff to be more credible. It is clear that such a determination is solely and appropriately left to the discretion of the trial court. See *Rosell*, 549 So.2d 840. "The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." *Canter v. Koehring Co.*, 283 So.2d 716, 721 (La.1973). Further, the Louisiana Supreme Court has stated:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony

14

of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

*Rosell*, 549 So.2d at 844-45 (citations omitted).

In the present case, we conclude, after review of the record, that the trial judge was presented with two permissible views concerning whether the documents presented were valid authentic acts. The trial court's findings were not manifestly erroneous.

### iii. Finding of Fraud or Forgery

Jeffrey further contends that the trial court erred in invalidating the acts without making an explicit finding of forgery or fraud. In its ruling, the trial court stated:

> The expert witness testimony is that the signatures on the Act of Cash Sale and the Act of Donation were so inconsistent, that the Court decided it cannot rely upon those signatures based upon the testimony. The signatures don't look anything like the other, and the expert testimony was that it's probable that she did not sign both those documents.
>
> And so, the Court will invalidate it.

Though Jeffrey argues a finding of forgery or fraud was not made explicit by the trial court, we disagree. Even assuming Jeffrey is correct, that does not end the inquiry. This court has encountered similar instances in which a trial court's reasons for ruling where silent and noted:

> The trial court gave no reasons for judgment. By deciding the case in favor of the plaintiff, we can thus infer that the trial judge held as a fact that the "sickness" did not predate the effective dates of the policies. We shall examine the record to determine whether such conclusion was manifest error.

*Smith v. Reserve Nat. Ins. Co.*, 370 So.2d 186, 187 (La.App. 3 Cir.1979).

In the case at hand, Julie specifically pled and presented evidence regarding the potential of fraud or forgery in the purported acts. The trial court then specifically stated that the signatures could not be relied on based upon the evidence presented. By so stating and ruling to invalidate both acts, this court can clearly infer that the trial court found the acts to be a result of fraud or forgery and were not authentic. Accordingly, we find no merit to this assignment of error.

15

*iv.    Act of Donation*

Jeffrey Thrasher argues that the trial court erred specifically in invalidating the Act of Donation, which was purportedly executed simultaneously with the Act of Cash Sale and appears to represent the true intent of that transaction, as it was not properly before the trial court. It is true that appellee Julie Thrasher's original petition, filed in the trial court on April 22, 2014, does not make mention of the Act of Donation, but rather only refers to the Act of Cash Sale. However, this oversight does not appear to be a fault on the part of Julie. Rather, there is no evidence Julie Thrasher was aware of the separate Act of Donation until June 23, 2015, when it was finally disclosed by Jeffrey more than a year after he was questioned closely on June 12, 2014, in a deposition regarding the sale. Unlike the Act of Cash sale, the Act of Donation was held in Jeffrey's attorney's private records, ostensibly to be used as a "trump card" or "Plan B" should there be a challenge to the Act of Cash Sale.

It is elementary that the law does not favor a multiplicity of litigation and that a litigant having been afforded a day in court will not be granted a second opportunity in the absence of good and compelling reasons. *Bond v. City of Baton Rouge*, 129 So.2d 887, 893 (La. Ct. App.1961). Louisiana Code of Civil Procedure article 1154 states:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

In the case at hand, the Act of Donation was not included in the original petition only because the respondent was unaware of its existence. The Act of Donation was

16

not filed in the conveyance records of Rapides Parish, or anywhere else such that Julie Thrasher could be expected to have knowledge of it. In fact, Attorney Sanford personally testified that the Act of Donation was held in his private office and not filed in the public records in the event that the Act of Cash Sale was invalidated.

Once Julie Thrasher became aware of the Act of Donation sometime in June of 2015, said act has been included in all arguments pertaining to the validity of the "sale." Both the Act of Cash Sale and Act of Donation were attached as exhibits at the trial on the merits. Further, both the plaintiff and defense offered evidence pertaining to the validity and execution of both documents without objection.

When evidence is introduced without objection on an issue not pleaded, the pleadings are deemed to have been enlarged or automatically amended by the implied consent of the parties. *Greengrove Missionary Baptist Church v. Cox*, 42,418 (La.App. 2 Cir. 9/19/07) 966 So.2d 707, *writ denied*, 07-2064 (La. 12/14/07), 970 So.2d 537. The Act of Donation was introduced into evidence at the trial and was specifically testified to by Julie's expert and all of Jeffrey's witnesses. There is no contention the Act of Donation was included for any reason other than to establish the validity of the transfer. Since both parties became aware of the Act of Donation, its authenticity has been contested with that of the Act of Cash Sale with no objection. It is clear that pursuant to La.Code Civ.P. art. 1154, the defense cannot now assert that the document and the issue of its authenticity was not properly before the trial court, and as such, we find this assignment of error without merit.

*Denial of Motion for New Trial*

The appellant's final assignment of error asserts the trial court erred by failing to consider "newly discovered dispositive video evidence of the donor's intent." This refers to a series of short video recordings that were supposedly taken during the signing of the Act of Cash Sale and simultaneous Act of Donation. The video recordings were done at Attorney Sanford's behest and were stored on his mobile phone. It is important

17

to note that Sanford has acted as Jeffrey's attorney throughout the bulk of proceedings and was only replaced by trial counsel due to his witness status as the notary. The mobile phone was lost some unknown time after the alleged execution of the documents at the hospital, before Attorney Sanford made any attempts to download or copy the recordings onto a computer disc or any other storage device. Though Attorney Sanford did not take any precautions in timely securing and preserving the video recordings at any time prior to trial, the recordings were able to be recovered from internet storage or "the cloud," apparently without difficulty, shortly after the trial and the adverse ruling from the trial court. The recordings in question were claimed to be unavailable during the time of trial, as Attorney Sanford claimed to have lost the phone on which the transaction had purportedly been recorded, and the recordings had not been externally saved. However, on September 9, 2016, just eight days after the signing of the judgment, Jeffrey Thrasher filed a Motion for New Trial, citing the apparently recovered video recordings. In certain instances, a new trial may be granted by the trial court at its great discretion, whereas in others the granting of a new trial is mandatory. Both instances are regulated by the Louisiana Code of Civil Procedure. Louisiana Code of Civil Procedure Article 1972 states:

> A new trial shall be granted, upon contradictory motion of any party, in the following cases:
>
> (1) When the verdict or judgment appears clearly contrary to the law and the evidence.
>
> (2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
>
> (3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

Louisiana Code of Civil Procedure Article 1973 states that a new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.

18

Appellant Jeffrey Thrasher argues both that the judgment was clearly contrary to the law and the evidence and that the video recordings were not available during trial, as they had not yet been recovered from the cloud, and as such, are grounds for a new trial based upon the above civil procedure articles. Jeffrey again urges that the trial court erred in its weighing of the evidence. The trial court refused to consider the video recordings at the hearing and ultimately denied the motion for new trial.

> A motion for new trial should be granted when the disputed judgment is clearly contrary to the law and evidence and, in any case, if there are good grounds therefor or when a party has discovered evidence important to [their] case which [they] could not have obtained during the proceedings with due diligence. La. C.C.P. arts. 1972 and 1973.

*Raburn v. Williams*, 34,718 (La.App. 2 Cir. 5/9/01), 786 So.2d 955, 960.

The moving party bears the burden of proving that there are adequate grounds for a new trial. *Hardee v. City of Jennings*, 10-1540 (La.App. 3 Cir. 5/11/11), 65 So.3d 266, *writ denied*, 11-1190 (La.App. 3 Cir. 9/23/11), 69 So.3d 1158.

"When a claim is made that a new trial is warranted due to newly discovered evidence, there must be a clear showing, not only that the evidence was discovered after the conclusion of the proceedings, but that every reasonable and diligent effort was made to procure it before the proceedings." *Raburn*, 786 So.2d at 961. A new trial will not be granted, on the ground of newly discovered evidence, where the evidence claimed to have been newly discovered was known to the party before or at the time of the trial. *Holloway Drilling Equip., Inc. v. Bodin*, 12-355 (La.App. 3 Cir. 11/7/12), 107 So.3d 699, *writ denied*, 13-251 (La. 3/8/13), 109 So.3d 353. A trial court is afforded great discretion in granting a new trial, and its decision denying a motion for new trial will not be disturbed "unless there has been a clear abuse of discretion." *Zeno v. Nixon*, 13-1267 (La.App. 3 Cir. 3/12/14), 133 So.3d 1285.

The main question to be determined is one of diligence. Jeffrey argues that the video recordings that purportedly capture the events of October 15, 2011, were unavailable throughout the duration of the trial, only becoming available after a final

19

judgment had been rendered in this matter. However, after questioning it became clear that almost no efforts were made to secure or obtain the videos at all. Originally it was asserted that Attorney Sanford lost the phone before the video recordings could be saved or transferred to some sort of storage device and that he tried "multiple times" to recover the unsaved footage. At the November 14, 2016 hearing on the motion for new trial, Sanford testified that he only looked into his files for the recordings after being questioned by the attorney general and did not look again before or after. He further testified that he did not hire, or even consult, any sort of computer expert or technician for the purpose of recovering the recordings until after the signing of a final judgment, over two years after the case was instituted.

Louisiana jurisprudence is well settled on the issue of diligence, and a party seeking a new trial on the basis of newly discovered evidence must demonstrate that it has done all that is reasonable to lead to timely discovery of the evidence. La.Code Civ.P. art. 1972(2). In *McClary v. Shiro*, 00-0305 (La.App. 1 Cir. 3/30/01), 801 So.2d 398, *writ denied*, 2001-2126 (La. 11/2/01), 800 So.2d 878, the first circuit found that granting a mother a new trial to allow her to introduce new testimony that was clearly available during the original trial was an abuse of the trial court's discretion. Further, the court held that absent new evidence that could not have been obtained before or during the trial, the mother was not entitled to new trial on her claim that her former boyfriend had sexually molested her daughter. The second circuit ruled similarly in *Cook v. Stowe*, 40,372 (La.App. 2 Cir. 10/26/05), 914 So.2d 1135, where the losing party moved for a new trial based on alleged newly discovered branding records. The court found that the branding evidence related to cows sold by a buyer at auction was not newly discovered evidence, where the seller could have easily obtained the branding records prior to the original trial but chose not to do so.

In *Esthay v. Manpower*, 627 So.2d 182 (La.App. 3 Cir.1993), this court refused to find that an employer exercised due diligence in obtaining x-rays pertaining to a

20

workers' compensation claimant's rib fractures from an earlier accident where the employer had over three years to investigate and procure evidence concerning the rib injury. As in this case, the evidence was discoverable and known to be pertinent before the hearing, and as such, the employer was not entitled to a new trial on the basis of newly discovered evidence. *Id.*

Jeffrey's contention that the video recordings were not discoverable, by the exercise of due diligence, prior to or during trial is significantly undermined by the fact that the video recordings appeared almost immediately available upon the receipt of an adverse ruling by the trial court. The investigation made by Attorney Sanford, if any, must indeed have been superficial at best. The computer expert hired by Sanford to retrieve the recordings was an associate of his that he had known for many years previously, as personally testified to by Sanford. Attorney Sanford further states that he was aware of the hired associate's experience with computers before the time of trial. There was no evidence or contention that the video recordings could not have been obtained in the same manner before the trial on the merits on December 1, 2015.

It is clear from the record that not all reasonable and diligent efforts were made to recover the video recordings in a timely manner prior to trial, as required by law. La.Code Civ.P. art. 1972; *Raburn*, 786 So.2d 955. In fact, it does not appear that any efforts were made prior to trial. No computer or technology expert was hired to recover the video recordings until after a final judgment had been signed and mailed. Attorney Sanford claims that the reason for this is because he "could not conceive" that the trial court would rule against an authentic act, i.e. the Act of Cash Sale. He also expressed incredulity regarding the invalidation of the Act of Donation, which he asserted was not before the trial court. He specifically refers to the Act of Donation as a "Plan B" to be used in the instance of the cash sale being invalidated, and the video recordings appear to have occurred only as a Plan C. Sanford further testified that it was after receipt of the final judgment that he realized "it was necessary to go and do everything I could to

21

make sure that my client [] had the evidence that might be out there[.]" Louisiana Code of Civil Procedure Article 1972 requires a much higher standard of diligence. As the court stated at the hearing on the motion for new trial, "You got[sic] to come to trial with your game on, your A plan." The contention that it is unbelievable that a trial court could rule differently does not negate one's duty to exercise due diligence, and Attorney Sanford's failure to do so is imputed to Jeffrey, as Sanford acted as counsel for Jeffrey until trial. Similarly, there is no evidence that trial counsel made any attempt to recover the recordings prior to trial. "It is elementary that the law does not favor a multiplicity of litigation and that a litigant having been afforded a day in court will not be granted a second opportunity in the absence of good and compelling reasons." *Bond v. City of Baton Rouge*, 129 So.2d at 893. As we agree with the trial court that Jeffrey failed to exercise due diligence in regards to the preserving, saving, or recovering the alleged video recordings, we find no abuse of the trial court's discretion in its refusal to grant the motion for new trial.

Such a finding does not completely end the inquiry. In a nonjury case, two questions are before a trial court in deciding whether to grant a motion for new trial: whether judgment is clearly contrary to the law and evidence, and whether the party seeking the new trial should have discovered the new evidence with due diligence. Under the first situation, the decision must be made on the evidence presented at the original trial, but in the second situation, the only question before the trial court is one of diligence. *Succession of Budwah*, 441 So.2d 39 (La.App. 3 Cir.1983). In the case at hand, we have already determined that due diligence was not exercised. As detailed above, we have already concluded the judgment is not clearly contrary to the law and evidence presented at trial. Our review of the record shows the trial court had a reasonable basis for its ruling. Therefore, we do not find the trial court erred in denying Jeffrey's Motion for New Trial on such grounds.

22

## Decree

For the reasons assigned herein, the judgment of the trial court invalidating both the Act of Cash Sale and Act of Donation is affirmed. All costs of this appeal are assessed to Defendant, Jeffrey Thrasher.

**AFFIRMED.**

23